**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

_____

No. 22-3390

_____

GIOVANNI LEPORE

v.

SELECTQUOTE INSURANCE SERVICES, INC.; SELECTQUOTE AUTO & HOME
INSURANCE SERVICES, LLC; SELECTQUOTE, INC.
Appellants

_____

On Appeal from the United States District Court
for the District of New Jersey
(D.C. Civil No. 2:22-cv-01753)
District Judge:  Honorable Claire C. Cecchi

_____

Submitted Under Third Circuit L.A.R. 34.1(a)
November 14, 2023

_____

Before:  CHAGARES, <u>Chief</u> <u>Judge</u>, MATEY and FUENTES, <u>Circuit</u> <u>Judges</u>

(Opinion filed:  December 7, 2023)

_____

OPINION[*]

_____

---

[*] This disposition is not an opinion of the full Court and, pursuant to I.O.P. 5.7, does not constitute binding precedent.

CHAGARES, Chief Judge.

Plaintiff Giovanni Lepore alleges that defendants SelectQuote Insurance Services, Inc., SelectQuote Auto & Home Insurance Services, LLC, and SelectQuote, Inc. (collectively, "SelectQuote") violated the New Jersey Law Against Discrimination by terminating his employment after he underwent heart surgery. SelectQuote moved to compel arbitration and to stay or dismiss the action based upon a document that was neither explicitly mentioned in the Complaint nor attached to it as an exhibit. Relying upon our decision in Guidotti v. Legal Helpers Debt Resolution, L.L.C., 716 F.3d 764 (3d Cir. 2013), the District Court denied the motion and ordered the parties to conduct discovery on the arbitrability of Lepore's claims. SelectQuote appealed, arguing that the District Court's application of Guidotti was incorrect. We will affirm.

I.

We write solely for the parties and so recite only the facts necessary to our disposition.[1] Lepore commenced his employment with SelectQuote on September 7, 2021. Shortly thereafter, on September 24, he began experiencing chest pains. He was taken to the emergency room and admitted to the hospital. Doctors performed triple-bypass surgery and replaced a valve in Lepore's heart, then discharged him on October 3.

Lepore informed his supervisor that he was being admitted to the hospital when he was admitted on September 24, and he was told by the supervisor to contact a different individual affiliated with SelectQuote, who then failed to respond to Lepore's inquiries.

---

[1] We draw these facts, which the parties do not dispute, from the Complaint.

2

On September 30, Lepore once again e-mailed his supervisor to inquire about disability accommodations. SelectQuote instead terminated his employment on that date. But it did not inform him of his termination immediately. Rather, on October 10, SelectQuote contacted him to ask that he return his equipment. Not until the next day, when he inquired as to why SelectQuote wanted its equipment back, was he finally informed that he had been terminated because his inconveniently scheduled heart surgery had brought him out of compliance with SelectQuote's attendance policy during training for new employees.

On February 18, 2022, Lepore filed suit against SelectQuote in New Jersey state court, asserting claims of discrimination, retaliation, and failure to accommodate, each in violation of the New Jersey Law Against Discrimination, N.J. Stat. Ann. § 10:5-1 et seq. While his Complaint did allege that his employment began on September 7, 2021, it did not mention or refer to the legal basis of that employment relationship, nor was any legal documentation memorializing or creating that relationship attached to the Complaint as an exhibit. SelectQuote first removed the case to federal court, then moved to compel arbitration of Lepore's claims and stay or dismiss the suit. In support of its motion, SelectQuote filed a copy of Lepore's purported employment agreement (the "Agreement"), which, it argues, contains a clause requiring the claims asserted in this suit to be arbitrated. The District Court first considered whether to decide the motion in the absence of discovery, using the standard of review applicable under Federal Rule of Civil Procedure 12(b)(6), or after discovery, using the standard applicable under Rule 56. Because the Agreement was neither referred to in the Complaint nor attached to the

3

Complaint as an exhibit, the District Court concluded that Guidotti required the application of the Rule 56 standard. It therefore denied the motion without prejudice and ordered the parties to conduct limited discovery on the arbitrability of Lepore's claims. SelectQuote timely appealed.

II.[2]

In Guidotti, we explained the circumstances in which a district court must employ either the Rule 12(b)(6) standard or the Rule 56 standard to decide a motion to compel arbitration. "[W]hen it is apparent, based on the face of a complaint, and documents relied upon in the complaint, that certain of a party's claims are subject to an enforceable arbitration clause, a motion to compel arbitration should be considered under a Rule 12(b)(6) standard without discovery's delay." Guidotti, 716 F.3d at 776 (quotation marks omitted). But if, instead, "the complaint and its supporting documents are unclear regarding the agreement to arbitrate . . . then the parties should be entitled to discovery on the question of arbitrability before a court entertains further briefing on the question," after which "the court may entertain a renewed motion to compel arbitration, this time judging the motion under a summary judgment standard." Id. (quotation marks and brackets omitted). The Complaint itself does not even mention the Agreement, much less allege the existence, validity, or scope of the arbitration clause contained within the

---

[2] The District Court had jurisdiction under 28 U.S.C. § 1332, and we have jurisdiction under 9 U.S.C. § 16(a)(1) over appeals from a district court order denying a motion to compel arbitration, whether with or without prejudice. See Quilloin v. Tenet HealthSystem Phila., Inc., 673 F.3d 221, 227 (3d Cir. 2012). We exercise plenary review in such appeals, including as to the question of what standard the district court should have employed in deciding the motion. Guidotti, 716 F.3d at 772.

Agreement. It is thus plainly not "apparent, based on the face of [the] complaint, . . . that certain of [Lepore]'s claims are subject to an enforceable arbitration clause." Id. (quotation marks omitted).

SelectQuote, however, argues that the arbitrability of Lepore's claims is facially apparent from the Agreement. Assuming, arguendo, that SelectQuote is correct, the appropriate standard for the District Court to have employed would turn on whether the Agreement is a "document[] relied upon in the complaint," id., such that it might be considered along with the Complaint, or whether instead the Agreement is not relied upon in the Complaint, such that the District Court could not consider it to decide the motion without first ordering limited discovery on arbitrability.

The District Court was correct to limit its review to the Complaint alone. We therefore conclude that it correctly declined to decide the motion under the Rule 12(b)(6) standard. While "[a]s a general matter, a district court ruling on a motion to dismiss may not consider matters extraneous to the pleadings," In re Burlington Coat Factory Sec. Litig., 114 F.3d 1410, 1426 (3d Cir. 1997), "a court may consider an undisputedly authentic document that a defendant attaches as an exhibit to a motion to dismiss if the plaintiff's claims are based on the document," Pension Benefit Guar. Corp. v. White Consol. Indus., Inc., 998 F.2d 1192, 1196 (3d Cir. 1993). Thus, the District Court could have considered the Agreement under the Rule 12(b)(6) standard only if Lepore's claims were "based on" the Agreement. A claim is "based on" a document, in turn, when it is "*integral to or explicitly relied* upon in the complaint." In re Burlington, 114 F.3d at

5

1426 (quoting Shaw v. Digital Equip. Corp., 82 F.3d 1194, 1120 (1st Cir. 1996)).

SelectQuote has not shown that the Agreement meets either prong of this test. The Complaint does not explicitly mention or cite the Agreement, which therefore is not "explicitly relied upon" in the Complaint. Nor is it "integral to" the Complaint or to the claims asserted therein. Our caselaw has not articulated an explicit test to govern when a document is integral to a complaint despite being first entered onto the record in response to the complaint. But we have permitted courts to consider such a document if the claims asserted in the complaint depend on its contents, such as when those contents establish the right that the plaintiff claims was infringed or when they constitute the unlawful conduct for which the plaintiff seeks to recover.[3] Although in general allowing a court to review documents extraneous to the complaint might unfairly blindside a plaintiff, such risks are ameliorated when a document is necessary to articulate the claims asserted in the complaint, because a plaintiff must have reviewed such documents in drafting the

---

[3] Examples include Tanksley v. Daniels, 902 F.3d 165, 172 (3d Cir. 2018) (permitting consideration of copyrighted work and allegedly infringing work in copyright infringement action); Oliver v. Roquet, 858 F.3d 180, 190 & n.7 (3d Cir. 2017) (permitting consideration of report that allegedly contained unlawful recommendation); Freeman v. Redstone, 753 F.3d 416, 423 (3d Cir. 2014) (permitting consideration of corporation's compensation plan and shareholder voting rules where complaint alleged (1) that the corporation had violated the compensation plan and (2) that those voting rules were unlawful); Rossman v. Fleet Bank (R.I.) National Association, 280 F.3d 384, 388 n.4 (3d Cir. 2002) (permitting consideration of allegedly unlawful credit card solicitations and agreements); and In re Donald J. Trump Casino Securities Litigation-Taj Mahal Litigation, 7 F.3d 357, 368 n.9 (3d Cir. 1993) ("Because the complaint directly challenged the prospectus, the district court properly considered the prospectus in deciding whether to grant the Rule 12(b)(6) motion.").

complaint.  See In re Burlington, 114 F.3d at 1426.

An employment agreement could be integral in this way to claims for discrimination, retaliation, or failure to accommodate in certain circumstances — for example, if the plaintiff alleged that the terms or conditions of his or her employment themselves, as set forth in the agreement, were discriminatory, retaliatory, or insufficiently accommodating.  But the gravamen of Lepore's claims is that SelectQuote terminated his employment in violation of New Jersey disability law.  Consulting the terms of the Agreement would not be necessary for Lepore to articulate such claims in the Complaint.  And because the contents of the Agreement are inessential to the articulation of Lepore's claims, the Agreement is not "integral to" the Complaint.  The District Court correctly excluded the Agreement from the scope of its review in deciding which standard to employ in deciding SelectQuote's motion.

SelectQuote does not rebut this argument by attempting to show how our governing precedents require the Agreement to be considered under the Rule 12(b)(6) standard.  Rather, it argues chiefly that as a matter of policy there is little to be gained by requiring discovery unless the plaintiff opposes the motion to compel arbitration by placing the authenticity or validity of the arbitration agreement in dispute.  While such arguments might be convincing had the parties' disagreement reached us as a question of first impression, it did not.  We are bound by Guidotti no less than the District Court was, and by its plain terms Guidotti requires discovery unless the arbitrability of the claims under suit is apparent from "the complaint and its supporting documents," regardless of whether the plaintiff has additionally placed the agreement to arbitrate in issue.  716 F.3d

7

at 776. SelectQuote has not convinced us that the Agreement is among the "supporting documents" that the District Court could consider prior to ordering discovery as to arbitrability, and our conclusion is not disturbed by the possible policy advantages that might be secured by requiring the District Court to consider the Agreement prior to ordering limited discovery into arbitrability.

III.

For the foregoing reasons, we will affirm the Order of the District Court.[4]

---

[4] Judge Matey would remand for the District Court to decide in the first instance whether the Agreement is integral to the claims raised in the Complaint.